UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, and THE CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK, | 25 CV 1036 (GHW) |
| Petitioners, | |
| -against- | |
| MINELLI CONSTRUCTION CO., INC., | |
| Respondent. | |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'
MOTION FOR SUMMARY JUDGMENT/TO CONFIRM ARBITRATION AWARD**

Maura Moosnick, Esq.
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor
New York, NY 10004
mmoosnick@vandallp.com
*Attorneys for Petitioners*

## <u>TABLE OF CONTENTS</u>

**Page**

**FACTS** ................................................................................................................ 1

**ARGUMENT** ...................................................................................................... 5

   **I.**   **Confirmation of the Arbitration Award Is Proper because Federal Labor Policy Favors the Confirmation of Arbitration Awards and the Court's Scope of Review of an Arbitration Award Is Exceedingly Narrow** ..................................... 5

   **II.**  **The Court Should Award Petitioners Attorneys' Fees and Costs** ............................ 7

         **A.**  **Petitioners Are Entitled to Attorneys' Fees and Costs** ................................... 7

         **B.**  **Petitioners Seek a Reasonable Amount of Attorneys' Fees and Costs** .......... 8

  **III.**  **Petitioners Are Entitled to Post-Judgment Interest on the Arbitration Award** ....... 11

**CONCLUSION** ................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Cases**

**Page**

**Cases**

*Abondolo v. Jerry WWHS Co.*,
829 F. Supp. 2d 120 (E.D.N.Y. 2011) .................................................................. 8, 11

*Abram Landau Real Estate v. Bevona*,
123 F.3d 69 (2d Cir. 1997)...................................................................................... 6

*AT&T Technologies, Inc. v. Communications Workers of America*,
475 U.S. 643 (1986).................................................................................................. 5

*Bell Prod. Engineers Ass'n v. Bell Helicopter Textron*,
688 F.2d 997 (5th Cir. 1982) ................................................................................... 8

*Crescent Publ'g Group, Inc. v. Playboy Enters.*,
246 F.3d 142 (2d Cir. 2001).................................................................................... 9

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006)....................................................................................... 6

*Dist. Council No. 9 v. All Phase Mirror & Glass*,
2006 U.S. Dist. LEXIS 34836 (S.D.N.Y. May 26, 2006)........................................ 8

*Finkel v. J&H Elec. Contr., Inc.*,
2023 U.S. Dist. LEXIS 129241 (E.D.N.Y. July 26, 2023) ...................................... 10

*Finkel v. KS&SS Associates, Inc.*,
2024 U.S. Dist. LEXIS 16463 (E.D.N.Y., Jan. 29, 2024) (report and recommendation adopted
at 2024 U.S. Dist. LEXIS 26917 (E.D.N.Y., Feb. 14, 2024)...................................... 10

*Florasynth, Inc. v. Pickholz*,
750 F.2d 171 (2d Cir. 1984)...................................................................................... 6

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................................................................. 9

*Leed Architectural Products, Inc. v. United Steelworkers of Am. Local 6674*,
916 F.2d 63 (2d Cir. 1990)....................................................................................... 6

*Lewis v. Whelan*,
99 F.3d 542 (2d Cir. 1996)........................................................................................ 11

*Local 1199, Drug, Hosp. & Health Care Emples. Union, RWDSU, AFL-CIO v. Brooks Drug Co.*,
956 F.2d 22 (2d Cir. 1992)....................................................................................... 5

*Millea v. Metro-North R. Co.*,
658 F.3d 154 (2d Cir. 2011).................................................................................... 9

*N.Y. City Dist. Council of Carpenters Pension Fund v. Angel Constr. Grp., LLC*,
2009 U.S. Dist. LEXIS 7701 (S.D.N.Y. Feb. 3, 2009).................................... 8

*Perdue v. Kenny A. ex rel. Winn*,
130 S. Ct. 1662 (2010)............................................................................................. 9

*Trs. of the Local 807 Labor-Management Pension Fund v. Showtime on the Piers, LLC*,
2023 U.S. Dist. LEXIS 38293 (E.D.N.Y. Mar. 6, 2023) ................................. 9

*Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Dejil Sys.*,
2012 U.S. Dist. LEXIS 123143 (S.D.N.Y. Aug. 29, 2012) ............................. 8

*Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. A&C Bros. Contracting*,
2022 U.S. Dist. LEXIS 187727 (S.D.N.Y. Oct. 13, 2022) ........................... 10

*Trs. Of the N.Y.C. Dist. Council of Carpenters Pension Fund v. All Aces Corp.*,
2024 U.S. Dist. Lexis 81614 (S.D.N.Y. April 30, 2024) .............................. 10

*Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Baroco Contracting Corp.*,
2024 U.S. Dist. LEXIS 190901 (S.D.N.Y. Oct. 17, 2024) ........................... 10

*Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Inniss Constr.*,
2021 U.S. Dist. LEXIS 92598 (S.D.N.Y. May 13, 2021)............................... 11

*Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. RSG Constr. Corp.*,
2022 U.S. Dist. LEXIS 160694 (S.D.N.Y. Sep. 6, 2022) ............................. 10

*Trs. of the Plumbers Local Union No 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401K Sav. Plan v. M. Vascellaro, 7 Inc.*,
2022 U.S. Dist. LEXIS 143758 (E.D.N.Y. Aug. 10, 2022)......................... 10

*Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund v. Reliable Build, Inc.*,
2022 WL 214389 (S.D.N.Y. Jan. 25, 2022) ......................................... 10-11

*United Paperworkers Int'l Union v. Misco, Inc.*,
484 U.S. 29 (1987)................................................................................................ 6

*United Steelworkers of America v. American Manufacturing Co.*,
363 U.S. 564 (1960)............................................................................................. 5

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*,
363 U.S. 593 (1960)......................................................................................................... 5

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)......................................................................................................... 5

## Statutes and Regulations

### Federal Statutes

28 U.S.C. § 1961............................................................................................................... 11

28 U.S.C. § 1961(a) ......................................................................................................... 11

Fed. R. Civ. P. 54(d)(1)....................................................................................................... 8

Petitioners, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds"), Trustees of the New York City Carpenters Relief and Charity Fund ("Charity Fund"), and The Carpenter Contractor Alliance of Metropolitan New York ("CCA Metro," together with the ERISA Funds and the Charity Fund, as the "Petitioners" or "Funds"), submit this Memorandum of Law in support of their Petition to Confirm an Arbitration Award against Minelli Construction Co., Inc. ("Respondent"). As set forth herein, the arbitration award at issue was rendered pursuant to a broad arbitration clause and applied express provisions of the applicable collective bargaining agreement to facts adduced at a full hearing. Accordingly, the arbitration award should be confirmed.

## FACTS

Respondent is an employer that was, at all relevant times, bound by a collective bargaining agreement ("CBA") with the New York City District Council of Carpenters (the "Union"). *See* Petitioners' Statement of Facts Pursuant to Rule 56.1 of the Southern District of New York's Local Civil Rules ("Statement of Facts" or "SOF"), ¶ 5. On or about March 10, 2017, Respondent executed a Project Labor Agreement Letter of Assent in connection with work performed for the Dormitory Authority of the State of New York ("DASNY") (the "DASNY Letter of Assent") on the project known as "City University of New York- LaGuardia Community College Center 3 – Facade Replacement and Related Asbestos Abatement" (the "LaGuardia Project"). *Id.*, ¶ 6. By executing the DASNY Letter of Assent, Respondent became bound to the DASNY Project Labor Agreement for Specified Renovation & Rehabilitation Work (the "DASNY PLA"). *Id.*, ¶ 7. Through the DASNY PLA, as set forth in Schedule A of the DASNY PLA, Respondent became bound to various collective bargaining agreements with the Union in connection with work

performed thereunder, specifically the Independent Building Construction Agreement covering the period July 1, 2017 through June 30, 2024 (the "CBA"). *Id.*, ¶ 8. Additionally, on or about July 27, 2021, Respondent executed a Project Labor Agreement Letter of Assent in connection with work performed for the City of New York (the "NYC Letter of Assent") on the public project known as the Staten Island Animal Shelter Project (the "Staten Island Project"). *Id.*, ¶ 9. By executing the NYC Letter of Assent, Respondent became bound to the 2020-2024 NYC Agency Renovation & Rehab City Owned Buildings/Structures Project Labor Agreement ("NYC PLA"). *Id.*, ¶ 10. Through the NYC PLA, as set forth in Schedule A of the NYC PLA, Respondent became bound to the same Independent Building Construction Agreement with the Union (the "CBA") in connection with work performed thereunder. *Id.*, ¶ 11. 12.  Accordingly, pursuant to both the DASNY PLA and the NYC PLA (collectively, the "PLAs"), Respondent has been bound to the CBA with the Union at all relevant times. SOF ¶ 12.

The Funds are the established jointly trusteed employee benefit funds to which contributions must be paid for every hour worked by Respondent's employees within the trade and geographical jurisdiction of the Union ("Covered Work"), as provided in the CBA. *Id.*, ¶ 13. The CBA further binds employers to the policies, rules, and regulations adopted by the Funds' Trustees. *Id.*, ¶ 15. Pursuant to the documents and instruments governing the Funds, the Trustees of the Funds established a Revised Statement of Policy for Collection of Employer Contributions ("Collection Policy") to which Respondent is further bound. *Id.*, ¶ 16.

The CBA requires Respondent to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions. *Id.*, ¶ 14. The Collection Policy specifies that "[t]he Outside Accounting Firms engaged by the Funds shall periodically review and/or audit the books and records of all the

employers bound by or signatory to a collective bargaining agreement with the [Union] or any other agreements under which they are obligated to contribute to the Funds." *Id.*, ¶ 17. Under the Collection Policy, in the event that an employer refuses to comply with the CBA's audit procedures, the Funds, "shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period…[a] determination under this paragraph shall constitute presumptive evidence of delinquency." *Id.*, ¶ 18.

Pursuant to the CBA and Collection Policy, Petitioners sought an audit of Respondent covering the period April 1, 2022 through the then-present date (the "Audit"). *Id.*, ¶ 23. A dispute arose between the parties when Respondent failed to cooperate with the auditors and did not produce the books and records requested for the purpose of conducting the Audit. SOF ¶ 24. Pursuant to the Collection Policy, when Respondent refused to submit to an audit, the Funds conducted an estimated audit which revealed that Respondent failed to remit contributions to the Funds in the principal amount of $668,893.86. *Id.*, ¶ 25. Respondent did not challenge the estimated Audit findings. *Id.*, ¶ 26.

The CBA, Collection Policy, and the documents and instruments governing the Funds provide for the resolution of disputes via arbitration. *Id.*, ¶ 19. The Collection Policy further states:

> The Trustees are empowered to designate one or more arbitrators to serve in collection matters. The Trustees hereby designate a panel of five arbitrators, consisting of: Roger Maher, J.J. Pierson, Steven Kasarda, Jeffrey Stein and Daniel Engelstein. This panel can be changed at any time at the discretion of the Trustees.

*Id.*, ¶ 20. The CBA and Collection Policy provide that, should the Funds be required to arbitrate a dispute or file a lawsuit over unpaid contributions, the Funds shall be entitled to collect, in addition

to the delinquent contributions: (1) interest on the unpaid contributions at the prime rate of Citibank plus 2%; (2) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages in the amount of 20% of the unpaid contributions; (3) audit costs; and (4) reasonable costs and attorneys' fees incurred by the Funds for all time spent in collection efforts. *Id.*, ¶¶ 21–22.

Pursuant to the CBA and Collection Policy, Petitioners initiated arbitration before Steven C. Kasarda, a designated arbitrator under the Collection Policy. *Id.*, ¶ 27. Arbitrator Kasarda noticed said arbitration by mailing a Notice of Hearing to Respondent. *Id.*, ¶ 28. Thereafter, on November 12, 2024, the arbitrator held a hearing and rendered his award, in writing, dated December 6, 2024, determining said dispute (the "Award"). *Id.*, ¶ 29. Specifically, the arbitrator found that Respondent violated the CBA when it failed to permit the Funds to audit Respondent's books and records, and ordered Respondent to pay the Funds the sum of $894,480.29, consisting of: (i) the estimated principal deficiency of $668,893.86; (ii) interest thereon of $88,907.66; (iii) liquidated damages of $133,778.77; (iv) court costs of $400; (v) attorneys' fees of $1,500; and, (vi) the arbitrator's fee of $1,000. SOF ¶ 30. The arbitrator further ordered interest to accrue on the aggregate amount of the Award at the annual rate of 10.5% from date of issuance of the Award. *Id.*, ¶ 31. The Award also ordered Respondent to comply with the Funds' outstanding audit request and directed Respondent to produce its books and records within thirty (30) days of the Award. *Id.*, ¶ 32. On December 11, 2024, Respondent was served with a demand for payment and compliance with the Award via certified mail and email. *Id.*, ¶ 33. As of the date of this Petition, Respondent has failed to pay any portion of the Award and has not complied with the audit compliance order. *Id.*, ¶ 24. The Award has not been vacated or modified and no application for such relief is currently pending. *Id.*, ¶ 35.

## ARGUMENT

**I.    Confirmation of the Arbitration Award Is Proper because Federal Labor Policy Favors the Confirmation of Arbitration Awards and the Court's Scope of Review of an Arbitration Award Is Exceedingly Narrow**

The United States Supreme Court and the Court of Appeals for the Second Circuit hold that arbitrations of disputes held pursuant to provisions of collective bargaining agreements between employers and fringe benefit funds are liberally encouraged as basic to federal labor policy. The fundamental principles of labor arbitration established in the Supreme Court's celebrated *Steelworker Trilogy – United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960) – have served the industrial relations community well by fostering reliance on arbitration as the preferred method of resolving disputes arising under the terms of a collective bargaining agreement. *See AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (noting that the principles derived from the *Steelworker* cases "have served the industrial relations community well, and have led to continued reliance on arbitrations, rather than strikes or lockouts, as the preferred method of resolving disputes arising during the term of a collective-bargaining agreement").

To effect this important public policy, the role of a court in reviewing an arbitration award is extremely limited. An award should be confirmed so long as the arbitrator "acted within the scope of his authority" and "the award draws its essence from the agreement." *Local 1199, Drug, Hosp. & Health Care Emples. Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992). Neither a disagreement with the arbitrator's finding of fact, nor a difference of opinion about the correct interpretation of the contract, is an occasion for judicial intervention. *See, e.g.*,

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision."); *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 74-75 (2d Cir. 1997) ("Even if a court is convinced the arbitrator's decision is incorrect, the decision should not be vacated so long as the arbitrator did not exceed the scope of his authority.") (citing *Leed Architectural Products, Inc. v. United Steelworkers of Am. Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990)). Indeed, confirmation of an arbitration award is a "'summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). Accordingly, a court "must grant the award unless the award is vacated, modified, or corrected." *Id.* (internal quotations omitted).

Here, the independent arbitrator acted within the scope of his authority in issuing the Award. As more fully set forth in the Statement of Facts, Respondent is bound by CBA with the Union. SOF, ¶¶ 6–12. The CBA requires Respondent to remit contributions to the Funds for all work performed within the trade and geographical jurisdiction of the Union and to submit its books and records to an audit by the Funds to ensure that it is making all required benefit contributions to the Funds. *Id.*, ¶¶ 13–14. The Collection Policy and the documents and instruments governing the Funds provide for the resolution of disputes via arbitration. *Id.*, ¶ 19.

Pursuant to the CBA and Collection Policy, Petitioners sought an audit of Respondent covering the period April 1, 2022 through the then-present date (the "Audit"). *Id.*, ¶ 23. A dispute arose between the parties when Respondent failed to cooperate with the auditors and did not produce the books and records requested for the purpose of conducting the Audit. *Id.*, ¶ 24.

Pursuant to the Collection Policy, when Respondent refused to submit to an audit, the Funds conducted an estimated audit which revealed that Respondent failed to remit contributions to the Funds in the principal amount of $668,893.86. *Id*., ¶ 25. Respondent did not challenge the estimated Audit findings. *Id*., ¶ 26. Thereafter, Petitioners submitted the matter to arbitration in accordance with the CBA. *Id.*, ¶¶ 27-28. Consistent with the CBA, the arbitrator found that Respondent violated the CBA when it failed to permit the Funds to audit Respondent's books and records, and ordered Respondent to pay the Funds the sum of $894,480.29, consisting of: (i) the estimated principal deficiency of $668,893.86; (ii) interest thereon of $88,907.66; (iii) liquidated damages of $133,778.77; (iv) court costs of $400; (v) attorneys' fees of $1,500; and, (vi) the arbitrator's fee of $1,000. *Id*., ¶ 30. The arbitrator further ordered interest, at the annual rate of 10.5%, to accrue on the aggregate amount of the Award from the date of issuance of the Award and ordered compliance with the Funds' outstanding audit request, directing Respondent to produce its books and records within thirty (30) days of the Award. SOF ¶¶ 31-32. As is evident by the foregoing facts, the arbitrator acted within the scope of his authority in issuing the Award, which is consistent with the CBA's provisions. Furthermore, the award has not been vacated, modified, or corrected. *Id.*, ¶ 35. Therefore, the Court should defer to the arbitrator and confirm the Award.

## II.   **The Court Should Award Petitioners Attorneys' Fees and Costs**

### A.   Petitioners Are Entitled to Attorneys' Fees and Costs

Under the CBA, Petitioners are entitled to an award of attorneys' fees in connection with this action to recover delinquent Fund contributions by Respondent. The CBA provides that:

> In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay

7

> to such Fund(s), in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:
>
> •      •      •
>
> (4) reasonable attorney's fees and costs of the action…

*See Id*., ¶¶ 21, 36.

Moreover, it is well established that courts routinely award costs to the prevailing petitioners in actions to confirm an arbitration award. *See, e.g.*, *Abondolo v. Jerry WWHS Co.*, 829 F. Supp. 2d 120, 123 (E.D.N.Y. 2011) (noting that this practice "is consistent with the general principle that, in most civil suits, 'costs—other than attorney's fees—should be allowed to the prevailing party.'") (quoting Fed. R. Civ. P. 54(d)(1)). It is equally well established that "when a party fails to abide by an arbitrator's determination without justification . . . attorney's fees may be awarded." *Dist. Council No. 9 v. All Phase Mirror & Glass*, 2006 U.S. Dist. LEXIS 34836, at *4 (S.D.N.Y. May 26, 2006) (citing *Bell Prod. Engineers Ass'n v. Bell Helicopter Textron*, 688 F.2d 997, 999 (5th Cir. 1982)); *see also Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Dejil Sys.*, 2012 U.S. Dist. LEXIS 123143, at *11 (S.D.N.Y. Aug. 29, 2012) ("In confirmation proceedings, 'the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'") (quoting *N.Y. City Dist. Council of Carpenters Pension Fund v. Angel Constr. Grp., LLC*, 2009 U.S. Dist. LEXIS 7701, at *2 (S.D.N.Y. Feb. 3, 2009)). Here, there is no justification for Respondent's failure to abide by the arbitration award. As such, should the Court confirm the award, Petitioners request costs and attorneys' fees as set forth below.

B.    Petitioners Seek a Reasonable Amount of Attorneys' Fees and Costs

Petitioners' requested fees and costs are reasonable. Courts recognize that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). It is well-established that "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010)). The Second Circuit has explained that "[t]he actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." *Crescent Publ'g Group, Inc. v. Playboy Enters.*, 246 F.3d 142, 151 (2d Cir. 2001).

In this case, counsel for Petitioners billed the Funds for the services of partners at a rate of $410 per hour for work performed in connection with this action prior to January 1, 2025 and $430 per hour for work performed in connection with this action after January 1, 2025. SOF, ¶ 37. Counsel for Petitioners billed the Funds for the services of associate attorneys at a rate of $310 per hour for work performed in connection with this action prior to January 1, 2025 and $325 per hour for work performed in connection with this action after January 1, 2025. *Id*. Finally, counsel for Petitioners billed the Funds for the services of legal assistants at a rate of $155 per hour for work performed in connection with this action prior to January 1, 2025 and $163 per hour for work performed in connection with this action after January 1, 2025. *Id*. All of the above-referenced rates are the result of negotiations between V&A and the Funds regarding the proper hourly rates to compensate V&A's attorneys and legal assistants for their services. *Id.*, ¶ 38; *see also, e.g., Trs. of the Local 807 Labor-Management Pension Fund v. Showtime on the Piers, LLC*, 2023 U.S. Dist. LEXIS 38293, *21 (E.D.N.Y. Mar. 6, 2023) (awarding $300 per hour for an associate in an ERISA default case). Courts in the Southern and Eastern District of New York have routinely approved hourly rates in these ranges for Virginia & Ambinder, LLP ("V&A")'s attorneys and legal

assistants. *See, e.g., Trs. Of the N.Y.C. Dist. Council of Carpenters Pension Fund v. All Aces Corp*., 2024 U.S. Dist. Lexis 81614, at *12-13 (S.D.N.Y. April 30, 2024) (approving a rate of $310 per hour for the work performed by associates and a rate of $155 per hour for the work performed by legal assistants and deeming the rates "reasonable"); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Baroco Contracting Corp*. 2024 U.S. Dist. LEXIS 190901 at *5-*8 (S.D.N.Y. Oct. 17, 2024) (approving a rate of $300 per hour for V&A associate attorneys and using the CPI Inflation Calculator in connection with prior rates awarded to V&A attorneys); *Finkel v. KS&SS Associates, Inc.,* 2024 U.S. Dist. LEXIS 16463, at * 17 (E.D.N.Y., Jan. 29, 2024) (report and recommendation adopted at 2024 U.S. Dist. LEXIS 26917 (E.D.N.Y., Feb. 14, 2024)) (approving partner rate of $410 per hour, associate and law clerk rate of $310 per hour, and legal assistant rate of $155 per hour, finding said rates to be "reasonable"); *Finkel v. J&H Elec. Contr., Inc.*, 2023 U.S. Dist. LEXIS 129241, at *5 (E.D.N.Y. July 26, 2023) (approving the rate of $290 per hour for a V&A junior associate, and observing that an award in the upper end of the range for associates is particularly reasonable in light of an "extensive amount of delegation to associates"); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. A&C Bros. Contracting*, 2022 U.S. Dist. LEXIS 187727, at *7 (S.D.N.Y. Oct. 13, 2022) (awarding $275 for a V&A associate); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. RSG Constr. Corp.*, 2022 U.S. Dist. LEXIS 160694, at *8 (S.D.N.Y. Sep. 6, 2022) (awarding $275 for a V&A junior associate and observing that "[t]he attorney's fees sought in this case are thoroughly reasonable"); *Trs. of the Plumbers Local Union No 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401K Sav. Plan v. M. Vascellaro, 7 Inc.*, 2022 U.S. Dist. LEXIS 143758, at *28 (E.D.N.Y. Aug. 10, 2022) (approving a V&A associate's rate of $285 and noting it as reasonable); *Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund v. Reliable Build, Inc*., 2022 WL 214389, at *2 (S.D.N.Y.

10

Jan. 25, 2022) (approving the rate of $275 for a V&A law clerk); *see also Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Inniss Constr.*, 2021 U.S. Dist. LEXIS 92598, at *13 (S.D.N.Y. May 13, 2021) ("The fees charged in this matter ($350 per hour for partner time, $275 per hour for associate time, and $120 per hour for legal assistants' time) are in line with *or less than* those charged by other firms performing similar work within the Southern District of New York, are the rates that the Trustees have agreed to pay their counsel, and are therefore reasonable.") (emphasis added).

As Petitioners' attorneys spent a total of 29.6 hours on this case, Petitioners should be awarded $9,300 in attorneys' fees. *Id.*, ¶ 39. Petitioners also request a reasonable amount of costs and seek the recovery for $153.30 in service, postage, and court fees incurred in this action. *Id.*, ¶ 40; *see also Abondolo*, 829 F. Supp. 2d at 123.

## III.    **Petitioners Are Entitled to Post-Judgment Interest on the Arbitration Award**

Under 28 U.S.C. § 1961, Petitioners are entitled to post-judgment interest on the full judgment amount "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). As recognized by the Second Circuit, "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)). Accordingly, Petitioners also request that the Court award Petitioners post-judgment interest in accordance with 28 U.S.C. § 1961's provisions.

## CONCLUSION

For the reasons and upon the authority set forth above and in the Petition and Statement of Facts, the arbitration award should be confirmed and judgment should be entered in favor of

Petitioners and against Respondent in accordance with the Proposed Judgment attached to the

instant Motion.

Dated: New York, New York              Respectfully submitted,
       February 25, 2025

                                   **VIRGINIA & AMBINDER, LLP**

By:    */s/ Maura Moosnick*
       Maura Moosnick, Esq.
       40 Broad Street, 7th Floor
       New York, New York 10004
       Telephone: (212) 943-9080
       mmoosnick@vandallp.com
       *Attorney for Petitioners*