```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/7/25
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                          :
TRUSTEES OF THE NEW YORK CITY       :
DISTRICT COUNCIL OF CARPENTERS   :
PENSION FUND, WELFARE FUND,          :    1:25-cv-1036-GHW
ANNUITY FUND, AND APPRENTICESHIP, :
JOURNEYMAN RETRAINING,              :    MEMORANDUM OPINION &
EDUCATIONAL AND INDUSTRY FUND, *et al.*, :            ORDER
                        Petitioners,    :
                                        :
                -against-               :
                                        :
MINELLI CONSTRUCTION CO., INC.,     :
                                        :
                        Respondent.   :
                                        :
----------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

       Respondent Minelli Construction Co., Inc. ("Minelli") violated its collective bargaining agreement by failing to submit to an audit request. Pursuant to Section 301 of the Labor Management Relations Act (the "LMRA"), Petitioners seek to confirm an arbitration award obtained against Minelli. Petitioners have demonstrated that the arbitration proceeding was conducted in accordance with the parties' agreements and that the arbitration award draws its essence from the agreements and is based on undisputed evidence. Accordingly, the arbitration award is confirmed.

**I.     BACKGROUND[1]**

     **A.  The Parties**

       In this action, the Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Funds (the "ERISA Funds"); the Trustees of the New York City Carpenters Relief and

---

[1] The undisputed facts are drawn from Petitioners' Local Rule 56.1 statement and sworn documents submitted in connection with this petition.

Charity Fund (the "Charity Fund"); and the Carpenter Contractor Alliance of Metropolitan New York ("CCA" and, together with the other petitioners, the "Funds" or the "Petitioners"), seek to confirm an arbitration award pursuant to a collective bargaining agreement with Minelli. Dkt. No. 1 ¶ 1 ("Petition").

The Trustees of the ERISA Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"). *Id.* ¶ 4; Dkt. No. 14 ¶ 1 ("Rule 56.1 Statement"). The Trustees of the Charity Fund are trustees of "a charitable organization established under section 501(c)(3) of the Internal Revenue Code." Petition ¶ 5; Rule 56.1 Statement ¶ 2. CCA is a "New York not-for-profit corporation." Rule 56.1 Statement ¶ 3. All three Petitioners are based in New York City. *Id.* ¶¶ 1–3.

The New York City District Council of Carpenters (the "Union") is a "labor organization that represents employees in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142." *Id.* ¶ 4. It is also based in New York City. *Id.* The Union is the "certified bargaining representative for certain employees of . . . Respondent." *Id.*

Respondent is a New Hampshire corporation. Petition ¶ 8. It has contracted to perform various construction projects for New York State and the City of New York. *See* Rule 56.1 Statement ¶¶ 6, 9.

### B. The Collective Bargaining Agreement

From July 1, 2017 through June 30, 2024, Respondent was bound by a collective bargaining agreement with the Union, *id.* ¶ 8, called the Independent Building Construction Agreement (the "CBA"), *id.* ¶¶ 11; Spencer Declaration Ex. C at 1 (CBA) (providing that the CBA applied for the period of "July 01, 2017 – June 30, 2024").

Respondent was bound under the CBA by virtue of two independent agreements. First, in March 2017, Respondent executed a Project Labor Agreement Letter of Assent in connection with a construction project for the Dormitory Authority of the State of New York ("DASNY"). Rule 56.1 Statement ¶ 6; Dkt. No. 11 ¶ 5 ("Spencer Declaration"); *id.* Ex. A (the "DASNY PLA Assent Letter"). Under the DASNY PLA Assent Letter, Respondent agreed "to be party and to be bound by the Project Labor Agreement Covering Specified Construction and Renovation Work" (the "DASNY PLA") in connection with the construction project. DASNY PLA Asset Letter at 1; Spencer Declaration Ex. B (DASNY PLA). Under the DASNY PLA, Respondent agreed to be bound by, among other collective bargaining agreements, the CBA. DASNY PLA, Schedule A at 5; Rule 56.1 Statement ¶ 8; Spencer Declaration ¶ 7.

Second, in July 2021, Respondent executed a Project Labor Agreement Letter of Asset in connection with a construction project for the City of New York. Rule 56.1 Statement ¶ 9; Spencer Declaration ¶ 8; *id.* Ex. D (the "NYC PLA Assent Letter"). Under the NYC PLA Assent Letter, Respondent agreed "to be a party and be bound by the New York Agency, Project Labor Agreement" (the "NYC PLA") in connection with the construction project. NYC PLA Assent Letter at 1; Spencer Declaration Ex. E (NYC PLA). Under the NYC PLA, Respondent agreed to be bound by, among other collective bargaining agreements, the CBA. NYC PLA, Schedule A at 5; Rule 56.1 Statement ¶ 11; Spencer Declaration ¶ 10.

### C. Contributions and Audits under the Collective Bargaining Agreement

The CBA provides that "[t]he Employer shall make contributions for each hour worked of all employees covered by this Agreement and employed by the Employer within the territory of this Agreement." CBA, Art. XV § 1. Petitioners are three of the Funds listed in the CBA to which contributions are to be made. *Id.* Petitioners are the Funds to which Respondent was required to

contribute in connection with work done by its employees within the trade and geographical territory covered under the CBA. *See* Dkt. No. 12 ¶ 6 (Davidian Declaration).

The CBA requires covered employers to make their books and records available for audits by the Trustees of the Funds at the discretion of the Trustees:

> Each signatory Employer shall make available to the Trustees of the various Fringe Benefit Trust Funds, or their designated auditing representative, all pertinent books and records, including but not limited to, all cash disbursement records, required for an audit, to enable . . . said auditor to ascertain and to verify, independently, that the proper contributions hereunder have been paid and such records will be produced whenever deemed necessary for the Trustees in connection with the proper administration of their fiduciary responsibilities. . . . The extent of the audit, and the determination as to what pertinent records are necessary to complete the audit, is in the sole discretion of the Employer/Union Trustees, so that they may independently verify that all required contributions have been made and discover the identity of all beneficiaries under the plans for which they have been entrusted, for proper administration.

CBA, Art. XV § 1.

The CBA also provides that "[e]ach Employer shall be bound by . . . all By-Laws, rules, procedures and policies adopted to regulate each of said Funds, including but not limited to, the Funds' Revised Statement of Policy for Collection of Employer Contributions." *Id.*, Art. XV § 3. On May 24, 2023, the Trustees of the Funds established a Revised Statement of Policy for Collection of Employer Contributions. Davidian Declaration Ex. J (the "Collection Policy"). The Collection Policy is binding on Respondent pursuant to the CBA. CBA Art. XV § 3.

The Collection Policy provides that "[t]he Outside Accounting Firms engaged by the Funds shall periodically review and/or audit the books and records of all the employers bound by or signatory to a collective bargaining agreement with [the Union]." Collection Policy § IV.1. If an employer refuses to comply with an audit, the Collection Policy provides a method for estimating the amount of delinquent contributions. In particular, the Funds

> shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours

4

reported per week for any period of four consecutive weeks during the audit period. If the employer reported no hours during the audit period, then the determination shall be made based on the highest number of average hours reported per week for any period of four consecutive weeks during the prior audit period.

*Id.* § IV.12.  The Collection Policy further provides that if a determination is made pursuant to this method, the determination "shall constitute presumptive evidence of delinquency."  *Id.*

### D.  Disputes under the Collective Bargaining Agreement

The Collection Policy provides that "legal action to collect delinquencies shall generally be in the form of arbitration."  *Id.* § VI.1.  It permits the Trustees to "designate one or more arbitrators to serve in collection matters," and provides that the Trustees "hereby designate a panel of five arbitrators, consisting of:  Roger Maher, J.J. Pierson, Steven Kasarda, Jeffrey Stein and Daniel Engelstein."  *Id.* § VI.2.  The panel "can be changed at any time at the discretion of the Trustees."  *Id.*

The CBA and Collection Policy provide that, in the event that the Funds must arbitrate a dispute or sue for unpaid contributions, the Funds are entitled to collect more than the late contributions alone.  Davidian Declaration ¶ 14.  In addition to the delinquent amount, the Funds are entitled to "a delinquency assessment."  Collection Policy § V.4.  "The amount of the delinquency assessment shall be the greater of (a) interest on the delinquent contributions . . . or (b) liquidated damages in the amount of twenty percent (20%) of all delinquent contributions."  *Id.*  The Funds are also entitled to interest on the delinquent amount, which is "calculated at the prime lending rate of JPMorgan Chase Bank plus 200 basis points."  *Id.* § V.1.  Finally, the Funds are entitled to "[a]ll recoverable costs actually incurred in court or other legal actions for the collection of delinquent contributions."  *Id.*

### E.  The Underlying Dispute and Arbitration

Pursuant to the terms of the CBA and the Collection Policy, Petitioners requested an audit of Respondent covering the period from April 1, 2022 through the date of the request.  Davidian

5

Declaration ¶ 16.  Respondent, however, "failed to cooperate with the auditors and did not produce the books and records requested for the purpose of conducting the audit." *Id.* ¶ 17.  The Funds conducted an audit using the method for estimating delinquent contributions provided in the Collection Policy.  *Id.* ¶ 18; *see* Collection Policy § IV.12.  The audit calculated that Respondent had failed to remit $668,893.86 in contributions to the Funds.  Davidian Declaration ¶ 18; *Id.* Ex. K ("Estimated Audit Calculation").  "Respondent did not challenge the estimated [a]udit findings."  *Id.* ¶ 18.

After conducting the estimated audit, the Funds initiated arbitration before Steven Kasarda (the "Arbitrator").  *Id.* ¶ 19; *see also* Collection Policy § VI.2 (designating Mr. Kasarda as an arbitrator).  The arbitration was held on November 12, 2024.  Davidian Declaration Ex. L.  The Arbitrator mailed Respondent notice of the arbitration in a letter dated October 15, 2024.  *Id.*  Respondent did not appear at the arbitration.  Davidian Declaration Ex. M at 2 ("Award").

In a December 6, 2024 decision, the Arbitrator determined that Respondent had violated the CBA when it failed to permit the Funds' auditors to examine its books and records for the relevant period.  *Id.*  He awarded Petitioners $894,480.29, consisting of $668,893.86 in total principal, $88,907.66 in total interest, $133,778.77 in liquidated damages, $400 in court costs, $1,500 in attorneys' fees, and a $1,000 arbitrator's fee.  *Id.* at 2–3.  He also determined that interest at an annual rate of 10.25% would accrue on the award from the time it was issued.  *Id.* at 3.  Finally, he ordered Respondent to "produce all required Books and Records within 30 days" of the Award.  *Id.*  Petitioners served Respondent with a "letter demanding payment and compliance with the Award" on December 11, 2024.  Dkt. No. 13 ¶ 4 ("Moosnick Declaration"); *id.* Ex. N (demand letter, stating that "[a] copy of the Award is enclosed").

"Respondent has not paid any portion of the Award" and "has not complied with [its] audit compliance order."  *Id.* ¶ 6.

### F. Relief Sought

Petitioners now seek confirmation of the Award "in all respects." Petition at 10. They seek: (1) an order requiring Respondent "to make its books and records available to Petitioners within thirty (30) days for purposes of an audit in compliance with the Award"; (2) judgment in the amount of $894,480.29 pursuant to the Award "plus interest from the date of the Award through the date of judgment"; (3) an award of $9,300 in attorneys' fees and $153.30 in costs arising out of this petition; and (4) "post-judgment interest at the statutory rate." Petition at 10; Moosnick Declaration Ex. Q ("Proposed Judgment").

The requested attorneys' fees are based on 29.6 hours of work. Moosnick Declaration ¶ 14. Petitioners' counsel, Virginia & Ambinder, LLP ("V&A"), billed for work by a partner "at a rate of $410 per hour for work performed prior to January 1, 2025, and $430 per hour for work performed thereafter." Rule 56.1 Statement ¶ 37; Moosnick Declaration ¶ 9. It billed for work by an associate "at a rate of $310 per hour for work performed prior to January 1, 2025, and $325 per hour for work performed thereafter." Rule 56.1 Statement ¶ 37; Moosnick Declaration ¶ 10. It billed for the work of two paralegals "at a rate of $155 per hour for work performed prior to January 1, 2025, and $163 for work performed thereafter." Rule 56.1 Statement ¶ 37; Moosnick Declaration ¶¶ 11–12.

### G. Procedural History

Petitioners filed a petition to confirm the arbitration award on February 5, 2025. Petition at 10. They moved for summary judgment on February 25, 2025. Dkt. No. 10. Minelli has not entered an appearance or made any filings with the Court despite being properly served with the complaint, Petitioners' motion, and all relevant filings. *See* Dkt. No. 16.

## II. LEGAL STANDARD

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 [], provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local*

*802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-4421, 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

The Court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537. Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (noting that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" and that "[o]nly a barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award" (internal quotation marks omitted)).

"[A]n arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." *Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999); *see also Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably

construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *Gottdiener*, 462 F.3d at 109. Thus, like unopposed summary judgment motions, unopposed confirmation petitions "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

### III.    DISCUSSION

The unopposed evidence submitted by Petitioners demonstrates that they are entitled to confirmation of the Award, post-judgment interest, and attorneys' fees and costs.

#### A. Confirmation of the Arbitration Award

There is no reason to believe that Petitioners procured the Award through fraud or dishonesty, or that the Arbitrator disregarded the CBA or acted outside the scope of his authority as arbitrator. To the contrary, the record indicates that the Arbitrator based his award on undisputed evidence that Petitioners attempted to audit Minelli and that Minelli denied their audit requests in violation of the CBA and the Collection Policy. *See* Award at 1–3. The record also indicates that the Arbitrator based the amount of his award of principal, interest, liquidated damages, and various costs on relevant provisions in the agreements and on undisputed testimony. *See id.* Accordingly, the Court grants Petitioners' motion and confirms the Award, including pre-judgment interest at a rate of 10.25% per annum from the date of the award through the date of judgment in this action. *See id.* at 3. The Court also orders Respondent to make its books and records available to Petitioners within thirty days for purposes of an audit in compliance with the Award. *Id.*

### B. Post-Judgment Interest

Petitioners also request post-judgment interest accruing from the date of judgment until Minelli pays in full. Petition at 10. Under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory," *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013), and this mandate applies when confirming arbitration awards, *see, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004). Therefore, the Court grants Petitioners' request for post-judgment interest. Post-judgment interest shall accrue at the statutory rate from the date judgment is entered until payment is made in full.

### C. Attorneys' Fees and Costs of Bringing this Petition

Petitioners also seek to recover reasonable attorneys' fees and costs incurred by bringing this petition. Petition at 10. "[I]n a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA does not provide for recovery of attorneys' fees. *See id.* "Nevertheless, because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's decision without justification." *Abondolo v. H. & M.S. Meat Corp.*, No. 07-cv-3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (internal quotation marks omitted) (quoting *N.Y. City Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03-cv-5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003)).

"A party's failure to comply immediately with an arbitration award does not necessarily warrant an award of attorney's fees." *Id.* But courts have found such an award permissible where "the party challenging the award has refuse[d] to abide by an arbitrator's decision without justification." *First Nat'l Supermarkets, Inc., v. Retail, Wholesale & Chain Store Food Emps. Union, Local*

10

*338*, 118 F.3d 893, 898 (2d Cir. 1997); *see also Ceona PTE Ltd. v. BMT Giant, S.A. De C.V.*, No. 16-cv-4437, 2016 WL 6094126, at *3 (S.D.N.Y. Oct. 19, 2016) (awarding attorneys' fees and costs to petitioner seeking confirmation of an arbitration award where the respondent "failed to satisfy the Final Award, and has not responded to [the petitioner's] petition in this action"); *Herrenknecht Corp. v. Best Road Boring*, No. 06-cv-5106, 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding attorneys' fees and costs to petitioner in unopposed petition to confirm an arbitration award where respondent "offered no justification for refusing to comply with the decision of the arbitrator").

Here, an award of attorneys' fees and costs is justified. By entering into the collective bargaining agreement, Minelli agreed to submit disputes arising from the CBA to binding arbitration. CBA Art. XV § 3; Collection Policy § VI.1. The Collection Policy explicitly entitles Petitioners to recover attorneys' fees incurred "in enforcing the Board of Trustees' rights to payroll reviews and/or audits." Collection Policy § V.6; *see New York City Dist. Council of Carpenters Pension Fund v. Dafna Const. Co.*, 438 F. Supp. 2d 238, 242 (S.D.N.Y. 2006) (awarding attorneys' fees in confirming an arbitration award "because the Agreement itself require[d] [respondent] to pay attorneys' fees incurred by the Trustees in seeking confirmation"). Minelli has neither complied with the Award nor provided any justification for its failure to do so. *See* Moosnick Declaration ¶ 6. For these reasons, the Court finds that it is just and reasonable to award Petitioners reasonable attorneys' fees and costs pursuant to bringing this action.

To calculate reasonable attorneys' fees, "district courts use the lodestar method—hours reasonably expended multiplied by a reasonable hourly rate." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). "A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[I]t is within the Court's discretion to reduce the requested rate" when the Court finds the

rate unreasonable in the relevant market. *Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp.*, No. 05-cv-5546, 2008 WL 3155122, at *9 (S.D.N.Y. June 19, 2008) (citing *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)), *report and recommendation adopted*, 2008 WL 2940517 (S.D.N.Y. July 29, 2008). To assist the Court in determining the appropriate award, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded" from the calculation of a reasonable fee. *Id.* (quoting *Hensley*, 461 U.S. at 434).

Petitioners' request is largely reasonable. Petitioners request $9,300 in attorneys' fees and $153.30 in costs incurred in bringing this petition. Moosnick Declaration ¶¶ 14–15; Rule 56.1 Statement ¶¶ 39–40. Petitioners submitted invoices documenting the specific tasks performed, the number of hours worked in total (29.6), and hourly rates for the two attorneys and two legal assistants who worked on the case. Moosnick Declaration Ex. O. These are satisfactory records of the attorneys' efforts and sufficiently set forth the specific fees and costs incurred while seeking confirmation of the award. *See id.* Furthermore, these fees "are the result of negotiations between V&A and the Funds regarding the proper hourly rates to compensate V&A's attorneys and legal assistants for their services." Moosnick Declaration ¶ 13. The Court also concludes that 29.6 hours is a reasonable number of hours worked given the description of the tasks performed.

The fees are based on the following rates. Ms. Moosnick, a partner at V&A, billed "at a rate of $410 per hour for work performed prior to January 1, 2025, and $430 per hour for work performed thereafter." Rule 56.1 Statement ¶ 37; Moosnick Declaration ¶ 9. Ms. Herstic, an associate at V&A, billed "at a rate of $310 per hour for work performed prior to January 1, 2025,

12

and $325 per hour for work performed thereafter." Rule 56.1 Statement ¶ 37; Moosnick Declaration ¶ 10. Ms. Frankel and Ms. Keating, both paralegals at V&A, billed "at a rate of $155 per hour for work performed prior to January 1, 2025, and $163 for work performed thereafter." Rule 56.1 Statement ¶ 37; Moosnick Declaration ¶¶ 11–12.

Ms. Moosnick's rate is reasonable given that her "primary practice area is ERISA litigation" and she "routinely handle[s] arbitration hearings and petitions to confirm arbitration awards." Moosnick Declaration ¶ 9; *see N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (noting that the rate of $425 per hour for partners in 2009 was a reasonable rate commensurate with the costs of similar work in the district for LMRA cases); *Watkins v. Smith*, No. 12-cv-4635, 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) ("In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases."). The requested rate of $155 per hour prior to January 1, 2025 and $163 per hour thereafter is also reasonable. *See, e.g., Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. and Indus. Fund v. Prime Contractors, Inc.*, No. 23-cv-872 (PAE), 2023 WL 2823020, at *4 (S.D.N.Y. Apr. 7, 2023) (finding, in 2023, an hourly rate of $155 per hour reasonable for legal assistants).

However, the Court does not approve of the $310 and $325 per hour rates billed for Ms. Herstic. Ms. Herstic graduated from law school last year, in 2024. Moosnick Declaration ¶ 10. In 2023, the "typical[]" billing rate for associates in cases like this one "involving unopposed petitions to confirm an arbitration award" was "$225 to $250." *Finkel v. J&H Elec. Contracting, Inc.*, No. 22-cv-6298 (HG), 2023 WL 4763366, at *3 (E.D.N.Y. July 26, 2023). Ms. Herstic would have fallen in the lower range at that time given her relative lack of experience. *See Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Architectural Metal Concept LLC*, 636 F. Supp. 3d 459, 467 (S.D.N.Y. 2022) (reducing

13

reasonable hourly rate for associate with one year's experience to $225, observing that $225 per hour "is the more appropriate one for associates with [that level of] experience") (collecting cases). The Court recognizes that reasonable billing rates should be "updat[ed] . . . for inflation and market conditions," and accordingly, will approve a billing rate for Ms. Herstic of $250 per hour, the upper bound of the typical rate two years ago. *Rubin v. HSBC Bank USA, NA*, No. 20-cv-4566, 2025 WL 248253, at *5 (E.D.N.Y. Jan. 21, 2025). There is no basis in Petitioners' materials to approve a higher rate than that. *See* Moosnick Declaration ¶ 10.

Finally, Petitioners' request for $153.30 in court costs and service fees is reasonable. Moosnick Declaration ¶ 15; Rule 56.1 Statement ¶ 40. Courts in this district routinely permit the recovery of such costs. *See New York City & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16-cv-1115, 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016).

Accordingly, Petitioners' request for attorneys' fees and costs is granted, but with the reduced rate of $250 per hour for Ms. Herstic's work. Applying that reduced rate for the hours Ms. Herstic worked, Petitioners are entitled to $7,515.00 in attorneys' fees and $153.30 in costs.

### IV. CONCLUSION

For these reasons, the petition to confirm the arbitration award is GRANTED. Respondent is ordered to submit to an audit by Petitioners of its books and records for the period from April 1, 2022 through the present. The Clerk of Court is directed to enter judgment for Petitioner in the amount of $894,480.29, plus prejudgment interest calculated at 10.25% per annum from April 1, 2022 through the date of judgment, together with attorneys' fees and costs in the amount of $7,668.30. Post-judgment interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961

from the date judgment is entered until payment is made in full.

    SO ORDERED.

Dated: May 7, 2025
New York, New York

                                      GREGORY H. WOODS
                                      United States District Judge